UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERIKA M. QUIROZ,

          Plaintiff,

   v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

          Defendant.

CASE NO. C17-5392-RBL

**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE**

Erika M. Quiroz seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred in assessing certain medical opinions, lay testimony, and her own subjective statements. Dkt. 10. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Ms. Quiroz is currently 49 years old, has a high school diploma and two years of college education, and has worked as an illustrator and graphic designer. Tr. 48, 217. In July 2013, she applied for benefits, alleging disability as of October 1, 2007.[1] Tr. 184-96. Her applications

---

[1] At the administrative hearing, Ms. Quiroz amended her alleged onset date to May 1, 2013. Tr. 44.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 1

were denied initially and on reconsideration. Tr. 132-37, 139-40. The ALJ conducted a hearing on May 22, 2015 (Tr. 41-81), and subsequently issued a decision finding Ms. Quiroz not disabled. Tr. 19-35. As the Appeals Council denied Ms. Quiroz's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-4.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Quiroz has not engaged in substantial gainful activity since the alleged onset date.

**Step two:** Ms. Quiroz's severe impairments include fibromyalgia, anxiety disorders, bipolar disorder, and borderline personality disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity ("RFC"):** Ms. Quiroz can perform light work, with additional limitations. She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. She should avoid exposure to extreme cold and heat, vibrations, heights, hazards, and heavy equipment. She can perform simple, routine tasks consistent with a specific vocational preparation level of 1-2. She cannot have contact with the public and would do best with "independent-type" work.

**Step four:** Ms. Quiroz cannot perform her past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Ms. Quiroz can perform, she is not disabled.

Tr. 19-35.

## DISCUSSION

**A.     Medical Opinions**

Ms. Quiroz raises a number of challenges to certain medical opinions, which the Court

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 2

will address in turn.

### 1. John Nance, Ph.D.

After the administrative hearing, the ALJ submitted interrogatories to Dr. Nance, a medical expert, to request answers to a variety of questions regarding Ms. Quiroz's functional limitations. Dr. Nance opined, *inter alia*, that Ms. Quiroz could perform "simple repetitive" tasks. Tr. 510. The ALJ's RFC assessment limits Ms. Quiroz to "simple, routine tasks consistent with an [SVP] number of 1-2[,]" and Ms. Quiroz argues that the ALJ's RFC assessment fails to fully account for Dr. Nance's opinion, even though the ALJ purported to give significant weight to it.

This argument lacks merit. There is no meaningful distinction between "simple repetitive" tasks and "simple, routine" tasks implicated in work at the SVP 1-2 level, and other courts have found "repetitive" and "routine" to be consistent. *See, e.g.*, *Cummings v. Berryhill*, 2018 WL 813620, at *2-3 (C.D. Cal. Feb. 9, 2018); *Burtenshaw v. Berryhill*, 2018 WL 550590, at *4 (C.D. Cal. Jan. 23, 2018); *Garcia v. Colvin*, 2016 WL 6304626, at *6 (C.D. Cal. Oct. 27, 2016).

Likewise, Ms. Quiroz has failed to show the ALJ's RFC assessment does not account for Dr. Nance's opinion that she requires a "relatively stable, predictable setting" in which to work. Tr. 510. The ALJ restricted Ms. Quiroz to performing simple, routine, unskilled work, and the vocational expert testified that the jobs identified at step five are "jobs where there isn't a whole lot of change in the workplace." Tr. 75.

Thus, because Ms. Quiroz has not shown the ALJ's RFC assessment is inconsistent with Dr. Nance's opinion, she has not shown that the ALJ's failure to include the identical restrictions described by Dr. Nance resulted in prejudice. *See Turner v. Comm'r of Social Sec. Admin.*, 613

F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician).

### *2. Wendy Hartinger, Psy.D.*

Dr. Hartinger examined Ms. Quiroz in June 2015, at DSHS's request. Tr. 496-500. She concluded Ms. Quiroz "is not likely capable of maintaining gainful employment in the future" because she cannot manage her mental health symptoms, even with treatment. Tr. 499-500.

The ALJ discounted Dr. Hartinger's opinion because it was based on Ms. Quiroz's presentation during the examination, and without a review of the longitudinal medical record. Tr. 30. The ALJ pointed to other examination results revealing normal concentration, in contrast to Dr. Hartinger's finding that Ms. Quiroz had poor concentration and memory (without citation to any specific test results. *Id*. The ALJ also found Dr. Hartinger was unaware of the extent of Ms. Quiroz's daily activities, including her volunteer work and church participation, which show she is more capable than found by Dr. Hartinger. Tr. 30-31.

Ms. Quiroz argues the ALJ erred in finding that her treatment record was inconsistent with Dr. Hartinger's opinion with respect to concentration deficits, because there are some records that are consistent with Dr. Hartinger's conclusion. Dkt. 10 at 7. But none of the records cited by Ms. Quiroz pertain to her concentration; they generally pertain to her tangential thought process and dramatic presentation. *Id*. (citing Tr. 451, 459, 462, 465, 488, 491). None of those citations suggests the ALJ erred in comparing "unremarkable" concentration testing with Dr. Hartinger's conclusory statements regarding Ms. Quiroz's concentration deficits, or in discounting Dr. Hartinger's opinion on that basis. *See Tommasetti v. Astrue*, 533 F.3d 1035,

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 4

1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

And although Ms. Quiroz emphasizes the testing performed by Dr. Hartinger (Dkt. 10 at 7-8), Dr. Hartinger did not cite any particular testing as support for her finding that Ms. Quiroz's concentration was poor, as noted by the ALJ. Furthermore, an examining physician previously found Ms. Quiroz retained sufficient concentration to perform detailed and complex tasks (Tr. 327), which contradicts Dr. Hartinger's conclusion. In light of these conflicts in the record, the ALJ's reasoning is supported by substantial evidence.

Ms. Quiroz also argues the ALJ erred in discounting Dr. Hartinger's opinion because she was unfamiliar with Ms. Quiroz's activities, which are inconsistent with Dr. Hartinger's conclusions. Ms. Quiroz contends Dr. Hartinger was indeed aware of her activities, and summarized them in her report. Dkt. 10 at 8 (citing Tr. 498). Dr. Hartinger's opinion does contain a summary of some of Ms. Quiroz's activities, but does not mention her volunteer work or church participation, which the ALJ highlighted. Tr. 30-31. Ms. Quiroz's ability to participate in activities on a regular basis at church (attending services, singing with the choir, taking additional voice lessons, cooking meals for events (Tr. 58-60)) is at odds with her report to Dr. Hartinger that she spends all day completing "rituals and compulsive behaviors, obsessive thoughts, and extreme anxiety" and must "consistently engag[e] in coping skills all day to keep herself calm." Tr. 499. The contrast between Ms. Quiroz's activities and Dr. Hartinger's conclusions is a specific, legitimate reason to discount Dr. Hartinger's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

//

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 5

### *3.    Erum Khaleeq, M.D.*

Dr. Khaleeq performed a psychiatric examination of Ms. Quiroz in September 2013. Tr. 323-27. Dr. Khaleeq opined that, *inter alia*, Ms. Quiroz

> may have difficulty accepting instructions from supervisors and interacting with coworkers and the public as evidenced from her presentation. She was repeatedly looking at her companion for support, holding her hand, and getting lost easily and was not as easily redirectable.
>
> [She] may have difficulty maintaining regular attendance in the workplace although she is able to follow a routine with her child at home.
>
> The usual stress encountered in the workplace may aggravate her psychiatric conditions.

Tr. 327. The ALJ gave "some weight" to Dr. Khaleeq's other findings, that Ms. Quiroz could perform simple and repetitive tasks, as well as detailed and complex tasks. Tr. 30. The ALJ characterized Dr. Khaleeq's findings quoted above as "equivocal" because they describe only "possible" difficulties, and are inconsistent with Ms. Quiroz's activities as well as with Dr. Khaleeq's Global Assessment of Functioning ("GAF") score of 65-70 (which describes only mild symptoms or limitations) and Ms. Quiroz's performance on mental status examination. Tr. 30.

The ALJ's finding that some of Dr. Khaleeq's findings were equivocal is a specific and legitimate reason to discount that portion of her opinion. *See Khal v. Colvin*, 2015 WL 5092586, at *7 (D. Or. Aug. 27, 2015), *aff'd sub nom*, *Khal v. Berryhill*, 690 Fed. Appx. 499 (9th Cir. Apr. 28, 2017) (finding a doctor's opinion describing "probabl[e]" limitations was equivocal, and affirming an ALJ's decision discounting it as such because it was speculative). Citation to other portions of Dr. Khaleeq's opinions, where she rated Ms. Quiroz's GAF score in the mild range and found that she performed "fairly well" on the mental status examination, also support the ALJ's assessment of Dr. Khaleeq's opinion. The ALJ did not use Dr. Khaleeq's GAF score to

1  "raise" Ms. Quiroz's level of function (as she alleges (Dkt. 10 at 11)); the ALJ reasonably found

2  the GAF score to be inconsistent with the potentially severe limitations described elsewhere by

3  Dr. Khaleeq.  This is not an improper use of GAF scores.  *See Buck v. Berryhill*, 869 F.3d 1040,

4  1050 (9th Cir. 2017) (finding no error in the ALJ's contrasting a GAF score of 60 with medical

5  opinion describing severe symptoms, and discounting the opinion on that basis).

### *4. Jeanne Fischer-McKee, ARNP*

Ms. Fischer-McKee, a treating provider, opined in March 2014, that Ms. Quiroz is unable to work, look for work, or prepare for work.  Tr. 366.  In March 2015, she described Ms. Quiroz as "unable to tolerate contract with others outside her small circle of supportive friends[,]" and impaired in her ability to go out in public, ability to concentrate, and ability to participate in pleasurable or work-related activities.  Tr. 431.

The ALJ gave little weight to Ms. Fischer-McKee's statements, finding them inconsistent with a treatment record indicating improvement with medication and mostly normal mental status examination findings.  Tr. 31.  The ALJ also found the statements to be inconsistent with activities, which demonstrate Ms. Quiroz can attend appointments regularly, go out in public, and enjoy pleasurable activities.  *Id*.

These are germane reasons to discount Ms. Fischer-McKee's lay opinion.  Although Ms. Quiroz contends that other evidence in the record is inconsistent with the ALJ's findings, the Court cannot reweigh the evidence, but reviews the ALJ's findings for substantial evidence.  The ALJ's decision references evidence of record indicating Ms. Quiroz's symptoms improved with treatment and that she was observed to have unremarkable or mild findings on mental status examinations on multiple occasions.  The activities cited by the ALJ are also inconsistent with the conclusions reached by Ms. Fischer-McKee.  Therefore, the ALJ's assessment of Ms.

Fischer-McKee's statements is affirmed. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons for discounting lay testimony included inconsistency with medical evidence, evidence of claimant's activities, and claimant's reports).

**B.      Ms. Quiroz's Testimony**

The ALJ discounted Ms. Quiroz's testimony for several reasons: (1) the objective medical evidence did not corroborate the extent of the limitations Ms. Quiroz alleged; (2) the treatment record shows "some periods of increased symptoms attributable to stressors, but longitudinal improvement with medication and counseling"; and (3) Ms. Quiroz's activities were not consistent with her allegations of debilitating pain or severe social anxiety. Tr. 24-29. Ms. Quiroz contends that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).

First, Ms. Quiroz argues the ALJ erred in writing a "blanket assertion" that her testimony is not credible, rather than explaining what parts of her testimony are not credible. Dkt. 10 at 15. Ms. Quiroz's argument does not accurately describe the ALJ's decision: the ALJ specifically identified testimony that he found to be inconsistent with other evidence, namely Ms. Quiroz's testimony regarding her limitations caused by fibromyalgia and her mental disorders, as well as her allegations of social anxiety. Tr. 24-29. The ALJ did not simply state that Ms. Quiroz lacked credibility, as she claims. Dkt. 10 at 15 ("[I]t is not sufficient for the ALJ to reject a claimant's testimony in one blanket assertion that the claimant is not credible.").

Ms. Quiroz further challenges the ALJ's reasoning with respect to fibromyalgia. Dkt. 10 at 16. The ALJ noted Ms. Quiroz's fibromyalgia diagnosis was established, but that her physical examinations were unremarkable (aside from subjectively reported tenderness), showing no

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 8

swelling, good range of motion, and full extremity strength. Tr. 25. Although Ms. Quiroz argues the ALJ's analysis of fibromyalgia errs because it mentions the lack of "objective findings," the ALJ credited the existence of Ms. Quiroz's fibromyalgia and focused on whether the record showed that it caused functional limitations. Dkt. 10 at 16. In light of her normal range of motion and strength, the ALJ reasonably found that Ms. Quiroz had not shown that her fibromyalgia caused disabling limitations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Next, Ms. Quiroz argues the ALJ erred in finding that her mental symptoms improved with treatment and that they were established primarily by subjective reports. Dkt. 10 at 16. She disputes her symptoms significantly improved, and contends that her limitations were not established primarily by her subjective reports. *Id.* She points to one treatment note that mentions increased symptoms (Dkt. 10 at 13, 16 (referring to Tr. 432)), but the ALJ did mention "periods of increased symptoms attributable to stressors[.]" Tr. 28. One treatment note does not establish that the ALJ unreasonably found that the record showed "longitudinal improvement with medication and counseling. *See id.* Because Ms. Quiroz has not shown that such a finding is unreasonable, the ALJ's interpretation is affirmed.

With regard to whether Ms. Quiroz's mental symptoms were established by only her subjective reports, she refers to another portion of her brief, addressing the ALJ's assessment of Dr. Hartinger's opinion. Dkt. 10 at 16 (referring to Dkt. 10 at 5). But whether Dr. Hartinger's opinion was based on Ms. Quiroz's subjective reports is a separate issue from whether the record as a whole contains mostly unremarkable objective findings regarding mental health, contrary to

Ms. Quiroz's subjective reports of disabling symptoms. The ALJ cited multiple normal mental status examinations and evidence of improvement with treatment, and contrasted that evidence with Ms. Quiroz's reports of an anxious mood. The ALJ did not err in considering the extent to which Ms. Quiroz's testimony was consistent with the objective evidence in the record.

Finally, Ms. Quiroz argues the ALJ erred in relying on her daily activities to discount her testimony, because the ALJ failed to find that her "activities consumed a substantial part of her day or that they were easily transferable to a work environment." Dkt. 10 at 16. But the ALJ explained how Ms. Quiroz's activities contradicted her testimony, specifically as to debilitating social anxiety, and did not err in discounting her testimony on that basis. There are two ways in which an ALJ can properly rely on activities to discount a claimant's testimony, and the fact that the ALJ did not use *one* of the proper methods does not invalidate his use of the *other* method. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

Because Ms. Quiroz has not shown that any of the ALJ's reasons to discount her testimony are insufficient or invalid, the ALJ's assessment of her testimony is affirmed.

**C.    Lay Testimony**

Ms. Quiroz challenges the ALJ's assessment of several lay statements. An ALJ's reasons to discount a lay statement must be germane. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

First, Ms. Quiroz challenges the ALJ's assessment of September 2013 and February 2015 statements provided by her friend, Margaret Lapic. *See* Tr. 32 (referring to Tr. 223-30, 268-69). The ALJ summarized Ms. Lapic's statements and found Ms. Lapic wrote in her capacity as an

advocate, rather than an objective observer, and that the statements were based on Ms. Quiroz's presentation and subjective reports, which were discounted for the reasons discussed *supra*. Tr. 32. The ALJ also found that Ms. Quiroz's activities were inconsistent with the limitations described by Ms. Lapic. *Id.*

Even if the ALJ erred in discounting Ms. Lapic's statements due to her status as an "advocate," the ALJ's other reasons are germane. Ms. Lapic's statements are replete with references to Ms. Quiroz's subjective statements, and, as explained, *supra* the ALJ did not err in discounting Ms. Quiroz's subjective statements. Furthermore, the activities identified by the ALJ — such as homeschooling her son, watching documentaries, cooking and house chores, and singing in a church choir — are inconsistent with the complete inability to focus and concentrate described by Ms. Lapic. *See, e.g.*, Tr. 223, 227, 230, 268. These are germane reasons to discount Ms. Lapic's statements. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 693-94 (9th Cir. 2009); *Lewis*, 236 F.3d at 511-12. The ALJ's inclusion of an invalid reason is harmless error, because the valid reasons are not intertwined with the invalid reason.

Ms. Quiroz goes on to challenge the ALJ's assessment of a statement written by her priest, Rev. Kathleen Patton. *See* Tr. 270. The ALJ summarized Rev. Patton's statement, and gave it "some weight," indicating that the concentration, attention, and social deficits described by Rev. Patton were accounted for in the RFC assessment. Tr. 33. The ALJ found that the more severe limitations described by Rev. Patton were inconsistent with Ms. Quiroz's activities and based on her subjective report, which was discounted. *Id.*

Ms. Quiroz argues that the ALJ erred in failing to specify which activities were inconsistent with Rev. Patton's statement. Dkt. 10 at 14. Even if this argument had merit, she does not challenge the ALJ's other reason: that Rev. Patton's statement relied on Ms. Quiroz's

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 11

subjective reports, which were discounted. Indeed, Rev. Patton's statement refers on multiple points to Ms. Quiroz's report of symptoms or experiences. Tr. 270. Because the ALJ properly discounted Ms. Quiroz's statements, as discussed *supra*, the ALJ did not err in discounting Rev. Patton's statement to the extent it was based on Ms. Quiroz's subjective report. *See Valentine*, 574 F.3d at 693-94. To the extent that the ALJ's other reason may be erroneous, it is harmless error in light of the ALJ's other independent, valid reason.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 6th day of March, 2018.

Ronald B. Leighton
United States District Judge

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE - 12